United States District Court
Southern District of Texas
**ENTERED**
August 15, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Jerome Dewayne Faulkner, § § § | |
| *Plaintiff,* § § | Case No. 4:20-cv-02565 |
| v. § § | |
| Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, § § § § § | |
| *Defendant.* § | |

## MEMORANDUM AND RECOMMENDATION

In this appeal of an administrative ruling denying disability benefits, the parties have filed cross-motions for summary judgment. Dkts. 16, 17, 24. Those motions were referred to the undersigned judge. Dkt. 19. After carefully considering the motions, Dkts. 16, 17, 24, responses, Dkts. 24, 27, the record, Dkt. 14, and the applicable law, it is recommended that Defendant's motion be granted and Plaintiff's motion be denied.

## Background

Plaintiff Jerome Dewayne Faulkner last worked in 2012, as a home health provider. R.36-37. Before and since that time, he has suffered chronic pain from degenerative disc disease in his cervical spine and lumbar spine. R.39. Faulkner also suffers pain from a bullet in his thigh, which has not been

removed since he was shot in 1997. R.14, 55. In addition, Faulkner has arthritis and erosion of the ring finger on his left hand. R.14.

Faulkner also suffers from mental impairments. He was diagnosed with recurrent severe depressive disorder, with psychotic features. R.14, 35. His condition has been treated with a number of medications, including Risperdal and duloxetine. R.66 (X27F). According to Faulkner, psychotherapy has also been helpful. R.64.

Faulkner applied for social security disability benefits for the period beginning on July 1, 2016. R.11. After his claim was denied, Faulkner requested and obtained a hearing before an ALJ. *Id.* Following the hearing, the ALJ determined that Faulkner was not disabled, and the Social Security Appeals Council denied review, R.1. This appeal ensued. Dkt. 1.

## Standard of Review

This Court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is enough that a reasonable mind would support the conclusion." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). It is "more than a scintilla, but it

need not be a preponderance." *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)) (internal quotation marks omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). "Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the

Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

## II. Substantial Evidence Supports the ALJ's Finding that Faulkner Did Not Qualify as Disabled under Listing 1.04(A).

Taking Faulkner's contentions in sequential order, his first challenge targets the ALJ's analysis and conclusions at step three: whether Faulkner's impairments, singly or in combination, meet the requirements of a "Listed Impairment," such that he is presumptively disabled. Dkt. 24 at 12-15. The listings describe certain "physical and mental illnesses and abnormalities, categorized by the body system they affect." *Stockman v. Saul*, 2019 WL 3240522, at *3 (citing *Hawthorne v. Astrue*, 493 F. Supp. 2d 88, 846 (S.D. Tex. 2007)). Their purpose is to describe impairments "severe enough to prevent a person from doing any gainful activity" regardless of age, education, or work experience. 20 C.F.R. § 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); SSR 83-19, 1983 WL 31248, at *1 (1983).

"If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry." *Sullivan*, 493 U.S. at 525. To do so, a claimant must show that his impairments meet "*all* the specified medical criteria" in the listing. *Id.* at 530. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (citing SSR 83-19, 1983 WL 31248).

4

Although the ALJ considered and rejected several listings, R.14-17, the only one that Faulkner invokes here is Listing 1.04(A). According to Faulkner, the ALJ erred as a matter of law by failing to explain which of the prescribed criteria Faulkner's conditions failed to satisfy. Dkt. 24 at 12-13. Indeed, the opinion simply states, globally and conclusorily, that the record does not indicate that Faulkner impairments meet all the requirements of any listing, followed by a paragraph that parrots the requirements of 1.04A. R.15; *see, e.g.*, *Aleman v. Saul*, 2021 WL 966075, at \*10 (S.D. Tex. Mar. 15, 2021) (concluding that ALJ failed to adequately explain "how she concluded that Aleman's symptoms did not meet or equal Listing 1.04, much less 1.04A").

Even if the ALJ's opinion lacked an adequate explanation, however, that omission does not automatically require remand. Remand is inappropriate unless substantial evidence showed that Listing 1.04A was met. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *see also Bullock v. Astrue*, 277 F. App'x 325, 327-28 (5th Cir. 2007); *Hernandez v. Heckler*, 704 F.2d 857, 860 (5th Cir. 1983). Put another way, "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Faulkner asserts that the ALJ, had he properly addressed the evidence, could have concluded that Faulkner's cervical-spine condition satisfies the following requirements of Listing 1.04A:

5

1. A disorder of the spine, including but not limited to "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture"; and

2. "compromise of nerve root (including the cauda equina) or the spinal cord"; and

3. "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)"; and

4. "sensory or reflex loss"; and

5. "if there is involvement of the lower back," then also "positive straight-leg raising test (sitting and supine) ...."

20 C.F.R., Part 404, Subpt. P, App'x 1, § 1.04(A) (2018); Dkt. 24 at 12-13. But as the Commissioner notes, the medical evidence supports only some of these requirements. Dkt. 27 at 7.

Faulkner emphasizes his diagnosis of a spinal disorder—spinal stenosis. Dkt. 24 at 14. According to him, that diagnosis necessarily means that he also suffers "compromise of nerve root ... or the spinal cord." *Id.* (citing an online dictionary). But Listing 1.04A explicitly requires proof of nerve-root compromise *even when* a claimant has spinal stenosis. *See* 20 C.F.R., Part 404, Subpt. P, App'x 1, § 1.04(A). A diagnosis of spinal stenosis therefore does not obviate this additional requirement of proof. *See, e.g.*, *McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013) (noting claimant's spinal stenosis but nonetheless concluding that "he provides no evidence that his spinal injury

6

resulted in compromise of the nerve root or the spinal cord, which is a requirement for all conditions within Listing 1.04"); *McKenzie v. Comm'r of Soc. Sec.*, 2020 WL 916872, at *4 (E.D. Cal. Feb. 26, 2020) (agreeing with the Commissioner that "mere diagnosis of spinal stenosis does not suffice" to establish the additional requirement of "nerve root compromise").

Because Faulkner presented no evidence that he met *all* the requirements of Listing 1.04A, the ALJ's failure to explain his rejection of that listing was harmless. *See, e.g., Wyre v. Comm'r of Soc. Sec. Admin.*, 2015 WL 589738, at *5-6 (M.D. La. Feb. 11, 2015) (ALJ's lack of adequate explanation was harmless because plaintiff's evidence satisfied some "but not all of the criteria of Listing 1.04A"). Remand is unwarranted on that issue.

### III. Substantial evidence supports the ALJ's formulation of Faulkner's RFC and his conclusion that Faulkner can perform certain light work.

Faulkner's remaining issues dispute the ALJ's formulation of the RFC and his conclusion about Faulkner's ability to perform other work. The RFC is a predicate to steps four and five that determines "the most the claimant can do despite [her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland*, 850 F.3d at 754 (quoting *Perez*, 415 F.3d at 461-62). When formulating a claimant's RFC, an ALJ examines the totality of the circumstances surrounding a claimant's impairments. *See* 20 C.F.R. § 404.1545(e).

For Faulkner's RFC, the ALJ concluded, among other limitations, that Faulkner (1) can "perform light work" that involves standing or walking for four hours each workday; (2) can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; (3) occasionally balance, stoop, knee, crouch, and crawl; (4) is limited to occasionally reached overhead bilaterally; (5) can frequently use his left upper extremity and engage in frequent pulling and pushing; (6) can lift or carry no more than 20 pounds occasionally and 10 pounds frequently; and (7) must avoid rough and uneven surfaces. R.17, 20. Applying that RFC at step five of the analysis, the ALJ agreed with testimony from a vocational expert that Faulkner can perform light work—specifically, as a mail clerk, photocopy machine operator, or parking lot attendant—that exists in significant numbers in the national economy. R.23 (decision); R.68-69 (expert's testimony).

Faulkner disputes both the RFC and the ALJ's ultimate conclusion at step five. According to Faulkner, this RFC improperly failed to account for both his use of a cane and his limitation on carrying or lifting no more than 20 pounds. Dkt. 24 at 6-11, 16-17. On the carrying and lifting restriction, Faulkner also alleges the ALJ failed to incorporate that restriction in hypotheticals posed to the ALJ. *Id.* at 20-21. Faulkner further asserts that the ALJ wrongly refused to find him disabled because Faulkner's exertional

8

restrictions fell below certain requirements for "light work." *Id.* at 18-19. These contentions are unsupported.

### A. There was no evidence that Faulkner would need to use a cane when performing work.

Faulkner cites various medical records mentioning his use of a cane. Dkt. 24 at 7-8 (citing Tr. 531, 536, 550, 673, 699, 746, 752, 844 (medical notes)). At the hearing, the ALJ asked Faulkner about this issue. R.58. In response to the ALJ's questions, Faulkner stated that he used a cane "mainly" when he leaves the house because he "can't walk very long distance" without "tightening up in my back or pain ...." *Id.* Faulkner indicated that the cane was prescribed by a physician, but he could not remember precisely when it was prescribed. *Id.*; *see also* R.61 (Faulkner's testimony that he used the cane after he stopped working in 2012).

Certain medical records, however, indicate that Faulkner told physicians that he used the cane only for walking long distances. R.699 (July 17, 2017 evaluation); R.1074 (April 2019 record). Dr. Kweli Amusa, a medical expert who testified at the hearing, cited the April 2019 record as the reason she excluded Faulkner's cane-use from her RFC opinion. R.41, 45-46. Given Faulkner's previous admission, Dr. Amusa concluded that the cane would be necessary only if Faulkner were working outdoors. R.46. The ALJ did not mention Faulkner's cane-use either when asking the vocational expert, Nicole

9

Fuscaldo, what potential jobs Faulkner could perform, R.67-69, nor did the ALJ include it in the RFC, R.17. Faulkner's challenge to these omissions is meritless. *See* Dkt. 24 at 7-11.

The mere fact that Faulkner *used* a cane does not mean that its use was medically necessary, such that the RFC had to account for it. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for [the] device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information."). SSR 96-9p, 1996 WL 374185, at *7 (1996). Records mentioning Faulkner's use of a cane are not enough, when "none of them state that it was medically necessary ...." *Carillo v. Saul*, 2020 WL 3442054, at *5 (N.D. Tex. June 4, 2020); *report and recommendation adopted*, 2020 WL 3440884 (N.D. Tex. June 22, 2020); *see also, e.g.*, *Byrd v. Berryhill*, 2018 WL 706468, at *3 (S.D. Tex. Feb. 5, 2018) ("[T]here is no objective medical evidence supporting a finding that her cane is medically necessary as is required to support a finding that her use of cane impacts her ability to work."). The lack of evidence showing the medical necessity of Faulkner's cane-use also obviated any requirement that the ALJ incorporate that factor in hypothetical questions posed to the vocational expert. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 1988) (ALJ's hypothetical

10

need only include limitations "supported by the evidence and recognized by the ALJ"). There is no error here, much less a reversible one.

### B. Substantial evidence supports the RFC and the ALJ's determination that Faulkner can perform other work.

Evidence and case law similarly foreclose Faulkner's other challenges to the RFC as well as those disputing the ALJ's determination that he can perform light work that exists in significant numbers, nationally (step five).

First, Faulkner contends the ALJ contradicted himself by finding that Faulkner could lift or carry "no more than 20 pounds occasionally," R.20, yet also finding that Faulkner can perform light work that requires lifting or carrying 10 pounds frequently and 20 pounds occasionally, *id.*[1] Dkt. 24 at 16-17 (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)). Like the Commissioner, Dkt. 27 at 7-8, the Court sees no conflict between these conclusions. The ALJ's first statement sets a *ceiling* of 20 pounds for occasional lifting and carrying. *See* R.20. It did not exclude the possibility that Faulkner can lift and carry *less* than 20 pounds with greater frequency—just as the ALJ also found. *See* R.17.

Second, Faulkner asserts that his limitation on walking and standing no more than four hours each workday conflicts with the requirements for light

---

[1] Faulkner also mischaracterizes the ALJ's findings when asserting that the RFC *precludes* Faulkner from "occasionally" lifting and carrying 20 pounds. Dkt. 24 at 17-18 (further asserting that the ALJ's findings prevent Faulkner "from performing even 'occasional' lifting of 20 pounds"). To the contrary, the ALJ found the opposite, concluding that Faulkner *can* occasionally lift or carry that amount of weight. R.20.

11

work, which requires standing or walking for about six hours daily. Dkt. 24 at 18-19 (citing SSR 83-10, 1983 WL 31251, at *6 (1983)). In his view, this conflict required the ALJ to apply the medical vocational guideline rule (the "grid rule") for sedentary work, 20 C.F.R. § 404, Subpt. P, App'x 2, § 201.14, which should have led to a finding that Faulkner was disabled. Dkt. 24 at 18-19 (asserting that Faulkner's age, high-school education, inability to perform past relevant work, and lack of transferable skills "directs a finding that" he is disabled under grid rule 201.14). The Commissioner disagrees because SSR 83-12 authorizes an ALJ to rely on a vocational expert when a claimant's limitations fall between two thresholds—one, which would lead to his classification as disabled, and other, which would not. Dkt. 27 at 8 (quoting SSR 83-12, 1983 WL 31253, at *3 (1983)). The Commissioner is correct.

SSR 83-12 recognizes that an individual whose "exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work" require "more difficult judgments ... as to the sufficiency of the remaining occupational basis to support a conclusion as to disability." 1983 WL 31253, at *3. SSR 83-12 instructs that "[vocational specialist] assistance is advisable for those types of cases." *Id.* Accordingly, courts have affirmed an ALJ's reliance on vocational expert testimony where a claimant's RFC falls between the thresholds for light and sedentary work. *See, e.g., Valverde v. Berryhill*, 2017 WL 4853812, at *3 (W.D. Tex. Oct. 25, 2017) (affirming

determination that "Plaintiff retained the ability to do light work with some limitations" even though her "standing and walking limitations [of two hours each workday] fall within the sedentary category"); *Conaway v. Astrue*, 2008 WL 4865549, at *4 (N.D. Tex. Nov. 10, 2008) (ALJ "properly relied on vocational expert testimony" where claimant's "exertional profile did not precisely fit into either the light or sedentary work categories"); *see also, e.g.*, *Belcher v. Berryhill*, 2018 WL 3621211, at *6 (S.D. Tex. June 22, 2018) (ALJ properly relied on vocational expert testimony where plaintiff's "RFC lies between two exertional ranges—... light and sedentary").

The same result is warranted here. Although Faulkner's exertional limitation falls slightly below the six hours of daily walking and standing associated with light work, the RFC reflects that Faulkner can carry more weight occasionally than what is typically required for sedentary work. *Compare* R.17, 20, *with* 20 C.F.R. § 404.1567 (sedentary work "involves lifting no more than 10 pounds at a time"; light work "requires a good deal of walking or standing"); SSR 83-10, 1983 WL 31251, at *6 (same). Under these circumstances, and consistent with SSR 83-12, the ALJ properly relied on testimony from a vocational expert who opined that Faulkner, despite his limitations, could still perform certain light work. R.22-23 (citing SSR 83-12, invoking vocational expert's testimony, and finding that testimony "consistent with the information contained in the Dictionary of Occupational Titles"); *see,*

*e.g.*, *Valverde*, 2017 WL 4853812, at *3 (upholding similar conclusion that plaintiff was not limited to sedentary work, and thus was not disabled under the grid rules, even though she was limited to two hours of standing and walking daily). Substantial evidence thus supports the ALJ's decision not to classify Faulkner as disabled under grid rule 201.14.

Third and lastly, Faulkner complains that the ALJ failed to include Faulkner's limitations on lifting and carrying in questions posed to the vocational expert. Dkt. 24 at 20-21. This is inaccurate. The ALJ explicitly included restrictions on lifting and carrying 20 pounds "occasionally" and lifting and carrying ten pounds "frequently" when asking the expert what work such an individual could perform. R.67-69. As noted above, these assumed facts do not conflict with the ALJ's general finding elsewhere that Faulkner is limited to lifting or carrying a *maximum* of 20 pounds. R.20. There was nothing wrong with the ALJ's hypothetical, which included all of Faulkner's limitations that the ALJ concluded were supported by the evidence. *See Masterson*, 309 F.3d at 273. This Court should affirm the ALJ's determinations.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Defendant Commissioner of Social Security's motion for summary judgment (Dkt. 16), **DENY** Plaintiff Jerome Dewayne Faulkner's motion for


summary judgment (Dkt. 24), and **AFFIRM** Defendant's denial of social security benefits.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 15, 2022, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge